UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FRANCO GASSIRARO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 4:19-CV-666-NAB |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER[1]

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Andrew M. Saul, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Franco Gassiraro ("Plaintiff") for a Period of Disability and Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). [Doc. 5.] Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

### I.    Issues for Review

Gassiraro presents two issues for review: (1) whether the ALJ erred by failing to find that Plaintiff's bipolar disorder and depression were not severe impairments which significantly limited

---

[1] Several relevant Social Security regulations were amended effective March 27, 2017. For purposes of this appeal, the court will use the Code of Federal Regulations ("C.F.R.") in effect at the time that this claim was filed on October 21, 2016. *See* 20 C.F.R. §§ 404.614, 404.1527, 416.325, 416.927; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q3.

his ability to do basic work activities; and (2) whether the ALJ's RFC determination was not supported by substantial record evidence. On those grounds, Gassiraro asks the court to reverse the Commissioner's decision and award benefits, or, in the alternative, to remand this cause to the Commissioner for a further hearing. [Doc. 1 at 2.]; [Doc. 11 at 16.]; [Doc. 15 at 8.] The Commissioner asserts the ALJS's decision is supported by substantial evidence in the record as a whole and should be affirmed.

## II.    Standard of Review

The standard of review of the Commissioner's decision is a narrow one. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). The court must affirm the decision of the Administrative Law Judge ("ALJ") "if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998) ("Substantial evidence is less than a preponderance but enough that a reasonable mind might accept it as adequate to support a decision.") (citing *Lawrence v. Chater*, 107 F.3d 674, 676 (8th Cir. 1997)). While the court considers both evidence that supports and detracts from the Commissioner's decision, it "may not reverse the Commissioner's decision merely because substantial evidence exists in the record that would have supported a contrary outcome." *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000). The court does not "reweigh the evidence presented to the ALJ," and "defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those

determinations are supported by good reasons and substantial evidence." *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006) (internal quotations and citations omitted). After reviewing the record, if the court finds that "it is possible to draw two inconsistent positions from the evidence and one of those positions represents [the Commissioner's] findings," the court "must affirm the decision." *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992) (citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir, 1989)). A court will not disturb an ALJ's decision unless it falls "outside the available zone of choice," and "[a] decision is not outside that zone of choice simply because [the court] may have reached a different conclusion" if it were the initial finder of fact. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (internal citations and quotations omitted).

### III.  Factual Background

Gassiraro was 48 at the time he filed his application for a period of disability and DIB and was 51 at the time of the ALJ's decision. (*See* Tr. 8, 166.) Plaintiff is a resident of St. Louis and lives in a house with his spouse and eight-year-old son. (Tr. 95, 188.) Plaintiff completed four years of college education and previously worked as a manager for an inventory liquidator company, a business coordinator for an organic health manufacturer, a sales coordinator and sales associate in a retail setting, and as a project manager for a liquidation company. (Tr. 190.) On July 26, 2017, Plaintiff testified at a hearing before the ALJ as follows: Plaintiff experiences shortness of breath, dizziness, and fatigue due to his congestive heart failure. (Tr. 94.) He takes several medications to treat his congestive heart failure, which cause him to experience fatigue, sensitivity to sunlight, diarrhea, dry mouth, and fluid retention. (Tr. 94.) Plaintiff's symptoms are present both with and without activity. (Tr. 95.) As a result, he cannot play sports with his son or walk more than one block without stopping to rest. (Tr. 95.) Both hot and cold weather exacerbate his symptoms, and he also experiences headaches and migraine headaches in cold weather. (Tr. 96.)

Due to depression, Plaintiff has trouble getting motivated and interacting with others. (Tr. 101-02.) With regular treatment, Plaintiff manages his diabetes (Tr. 103-04.) Plaintiff has difficulty sleeping (Tr. 104.) Plaintiff takes numerous medications to treat his various conditions. (Tr. 96-100.)

## IV.  Procedural Background

Plaintiff applied for a Period of Disability and DIB on July 14, 2015, alleging that he had been unable to work since March 12, 2012 due to congestive heart failure, migraine headaches, osteoarthritis, diabetes, and irritable bowel syndrome ("IBS"). (Tr. 166-67, 189.) On October 5, 2015, his claim was denied at the administrative level. (Tr. 124-27.) Plaintiff filed a request for a hearing by an ALJ on November 13, 2015. (Tr. 128-29.) He appeared before ALJ Karen Winn at a hearing held on July 26, 2017, represented by Michael Wolter. (Tr. 67.) The ALJ issued an unfavorable decision on May 2, 2018. (Tr. 11-34.) Plaintiff filed a Request for Review of the ALJ's denial on June 25, 2018, (Tr. 161-64), which the Appeals Council denied on January 22, 2019, (Tr. 1-5.). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992) (citing 20 C.F.R. § 404.981; *Russell v. Bowen*, 856 F.2d 81, 83-84 (9th Cir. 1988)).

## V.  Standard for Determining Disability Under the Act

For a claimant to qualify for disability benefits and establish entitlement for a period of disability, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).[2] *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment(s) must be of such severity that a claimant is "unable to do . . . past relevant work or any other substantial gainful work that exists in the national economy." 20 C.F.R. §§ 404.1505(a), 416.905(a).

To determine whether a claimant is entitled to disability benefits under the Act, the Commissioner performs a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

(1) Is the claimant currently performing substantial gainful activity?
(2) Does the claimant have a severe impairment?
(3) Does the impairment meet or equal an impairment listed in [20 C.F.R. Pt. 404, Subpt. P., App. 1, the Listing of Impairments]?
(4) Does the impairment prevent the claimant from performing past relevant work?
(5) Does the impairment prevent the claimant from doing any other work?

*Bryant v. Colvin*, 861 F.3d 779, 782 n.3 (8th Cir. 2017). "Prior to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"), which is the most a claimant can do despite her limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The RFC is a "function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, 1996 SSR LEXIS 5, at *8. An ALJ must examine all evidence relevant to the RFC determination, including medical records, observations of treating physicians and others, and the claimant's own descriptions of their limitations. *See Pearsall*, 274 F.3d at 1218 (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). The claimant has the burden of proof to show that they are disabled through step four of the five-step analysis. *Moore*, 572 F.3d at 523.

---

[2] The Act defines "physical or mental impairment" as one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3); 1382c(a)(3)(D).

If the claimant meets the burden of proof at step four, the burden shifts to the Commissioner, at step five, to show that there are a significant number of jobs available in the national economy that the claimant can perform based on their RFC, age, education, and work experience. *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005) (citing 20 C.F.R. § 404.1560(c)). The Commissioner must meet this burden either through application of the medical vocational guidelines or through the testimony of a vocational expert. *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir. 2001). If a claimant has a nonexertional impairment, such as mental, sensory, or skin impairments, application of the guidelines is not controlling and "cannot be used to direct a conclusion of disabled or not disabled without regard to other evidence, such as vocational testimony." *McCoy v. Schweiker*, 683 F.2d 1138, 1148 (8th Cir. 1982). If a claimant has both exertional and nonexertional impairments, the ALJ must first determine whether the claimant is entitled to a finding of disability under the guidelines based on the exertional impairment(s) alone, and if such a finding is not directed, the ALJ must consider how much the claimant's ability to work is further diminished by the nonexertional impairment(s). *Id.*

## VI. The ALJ's Decision

Following the administrative hearing and applying the five-step analysis, the ALJ found at step one that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of March 12, 2012 through his date last insured of September 30, 2017." (Tr. 14.) At step two, the ALJ found that Plaintiff had the following severe impairments: "chronic systolic heart failure; aortic valve insufficiency; status post aortic valve replacement; dilated cardiomyopathy; and irritable bowel syndrome." (Tr. 14.) At step three, the ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled

the severity of one of the listed impairments[.]" (Tr. 21.) The ALJ articulated Plaintiff's RFC as follows:

> the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), with the following additional limitations: he could occasionally climb ramps and stairs; could never climb ropes, ladders, or scaffolds; could occasionally be exposed to unprotected heights or hazardous machinery; and was limited to performing indoor work with no more than occasional exposure to temperature extremes.

(Tr. 22.) At step four, the ALJ concluded that Plaintiff was "capable of performing past relevant work as a delinquent account clerk" which "did not require the performance of work-related activities precluded by the claimant's residual functional capacity[.]" (Tr. 33.) Therefore, the ALJ determined that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from March 12, 2012, the alleged onset date, through September 20, 2017, the date last insured[.]" (Tr. 33.)

**VII.    Discussion**

> **A. The ALJ's Determination That Plaintiff's Depression and Bipolar Disorder Were Not Severe Impairments**

Plaintiff contends that the medical evidence of record supports a finding that his bipolar disorder and depression were severe impairments, and that the ALJ erred in finding that the impairments were non-severe conditions. [Doc. 11 at 7-8.] Specifically, Plaintiff argues that the ALJ erred in assigning little weight to the medical opinion of Dr. F. Timothy Leonberger, a consultative psychologist, because the ALJ: (i) incorrectly determined that Dr. Leonberger was not an acceptable medical source capable of rendering medical opinions; (ii) incorrectly found that Dr. Leonberger's opinion was internally inconsistent; and (iii) incorrectly found that Dr. Leonberger's opinion was inconsistent with the other medical record evidence. [Doc. 11 at 8-11.]

7

A severe impairment is defined as one which significantly limits the claimant's physical or mental ability to do basic work activities. *See Pekley v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). "Severity is not an onerous requirement for the claimant to meet but it is also not a toothless standard[.]" *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007) (internal citations omitted). "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007)). In order to determine the severity of a mental impairment, the ALJ must use the "special technique" described in the Social Security regulations: the ALJ "must first evaluate [a claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [the claimant has] a medically determinable impairment[]"then "rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas: "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; adapt or manage oneself" on a five-point scale of "none, mild, moderate, marked, and extreme: ranging from the least to highest degree of limitation. 20 C.F.R. §§ 404.1520a, 416.920a. If the degree of limitation in the four functional areas is rated as "none" or "mild," the ALJ "will generally conclude that [the claimant's] impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities." *Id.* §§ 404.1520a(d)(1) & 416.920a(d)(1).

Under the Social Security regulations, only acceptable medical sources can: (1) provide evidence to establish the existence of a medically determinable impairment; (2) provide medical opinions; and (3) be considered treating sources. *See Sloan v. Astrue*, 499 F.3d 883, 888 (8th Cir. 2007) (citing 20 C.F.R. §§ 404.1513(a), 416.913(a), 404.1527(a)(2), 416.927(a)(2), 404.1527(d), 416.927(d)). Licensed psychologists are acceptable medical sources who can establish an

8

impairment and provide medical opinions. 20 C.F.R. §§ 404.1502(a)(2), 416.902(a)(2). Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, and what the claimant can still do despite their impairments and their physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). All medical opinions, whether by treating or consultative examiners, are weighed based on (1) whether the provider examined the claimant; (2) whether the provider is a treating source; (3) the length of treatment relationship and frequency of examination, including the nature and extent of the treatment relationship; (4) supportability of the opinion with medical signs, laboratory findings, and explanations; (5) consistency with the record as a whole; (6) specialization; and (7) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Applying the special technique, the ALJ found that the Plaintiff had the medically determinable mental impairment of bipolar disorder, alternately diagnosed as depressive disorder. (Tr. 16.) Based on Plaintiff's testimony and the medical record evidence, the ALJ determined that the Plaintiff had a mild limitation in all four functional areas, making specific findings in each functional area. (Tr. 16-17.) In order to employ the special technique, the ALJ considered the medical record evidence to review the pertinent symptoms, signs, and laboratory findings related to Plaintiff's mental impairments. The record included pertinent observations and findings from Dr. John Rabun, Plaintiff's treating psychiatrist; Dr. F. Timothy Leonberger, a consulting psychologist; and Dr. Alexander Rudoi, Plaintiff's primary care provider. Dr. Robert Cottone, the state agency psychological consultant, determined that there was insufficient evidence to rate the severity of Plaintiff's mental impairments after reviewing Plaintiff's medical records, and did not provide opinion evidence. (Tr. 118-19.)

### i.   Medical Record Evidence from Dr. Rabun

Treatment notes from Dr. Rabun, which span from December 7, 2012 to July 29, 2015, include an Initial Psychiatric Evaluation and a series of outpatient progress notes which include Dr. Rabun's narrative notes about Plaintiff's self-reported condition, check-box style exam findings indicating Plaintiff's general appearance, speech, flow and content of thought, association, attention/concentration, affect/mood, language, and sensorial status, brief psychotherapy and pharmacological managements notes, Plaintiff's goals and treatment plan, a list of medication(s), and further information about any applicable diagnoses, comments, educational materials provided, and the duration of the exam.(Tr. 456-472.) Dr. Rabun's outpatient progress notes record exams on nearly each month between January 2013 and February 2014, except for December and June, and again in July 2015. *Id.* Dr. Rabun's initial evaluation findings include a diagnosis of "bipolar II, depressed;" a Global Assessment of Functioning ("GAF") score of 50; and exam observations that Plaintiff was calm, cooperative, well groomed and dressed, without any signs of focal neurological deficits, abnormal involuntary movements, or tremors; his flow of thought was sequential and logical; he exhibited good judgment and insight; was awake and oriented to person, place, and time; his speech had normal rate, rhythm, and volume; he successfully recalled 3 out of 3 objects after 3 minutes; and had a depressed mood. (Tr. 471.) Dr. Rabun's subsequent exam findings largely mirror these observations, (Tr. 456-69) except that he noted Plaintiff's mood was euthymic in March (Tr. 467), July (Tr. 464), September (Tr. 462), October (Tr. 461), and November (Tr. 460) of 2013, and in January 2014 (Tr. 459), February 2014 (Tr. 458), and July 2015 (Tr. 457). Plaintiff reported to Dr. Rabun in July 2015 that "the meds have been working" for the preceding 18 months. *Id.*

After reviewing Dr. Rabun's records, the ALJ assigned little weight to Dr. Rabun's medical opinion despite his treating relationship to Plaintiff and specialized experience as a psychiatrist. (Tr. 20.) The ALJ explained that Dr. Rabun's opinion evidence, consisting solely of the GAF score in his initial psychiatric evaluation in December 2012, was not an "assessment of an individual's ability to work . . . not standardized or based on any normative data, [did] not predict prognosis or treatment outcomes, [did] not directly correlate to the severity requirements in mental disorder listings or any specific functional limitations, and [did] not represent specific objective findings[.]" *Id.* Furthermore, the ALJ articulated that Dr. Rabun's opinion was less probative in evaluating Plaintiff's limitations in the four functional areas because it did not articulate any specific functional limitations, and that it was inconsistent with Dr. Rabun's own exam observations showing repeated findings of normal affect, behavior, and other psychiatric signs, and other medical evidence of record. *Id.* Plaintiff did not dispute the ALJ's findings with respect to Dr. Rabun.

### ii.  Medical Record Evidence from Dr. Leonberger

The record evidence from Dr. Leonberger consists of a medical source statement dated September 6, 2017 (Tr. 833-835), and psychological evaluation notes dated on August 30, 2017, including specific findings regarding Plaintiff's limitations in the four functional areas (Tr. 836-40). Dr. Leonberger's medical source statement noted that Plaintiff had marked impairment in carrying out complex instructions; moderate impairments in carrying out simple instructions and making judgments on complex work-related instructions; mild impairments in his ability to make judgments on simple work-related decisions, interacting appropriately with co-workers, supervisors, and the public, and responding appropriately to usual work situations and to changes in a routine work setting; and no impairments in understanding and remembering simple or

11

complex instructions, or in his ability to concentrate, persist, maintain pace, or adapt and manage himself. (Tr. 833-34.) Dr. Leonberger's exam notes indicate that Plaintiff expressed that he "stopped seeing Dr. Rabun because he did not feel like he improved[,]" that he had "been followed by his primary care physician after that time for psychological problems[,]" and that "he and his wife believe that he will seek out psychiatric assistance in the near future." (Tr. 838.) Based on his exam and a review of Plaintiff's clinical history, Dr. Leonberger diagnosed Plaintiff with Persistent Depressive Disorder, with Pure Dysthymic Syndrome. (Tr. 839.) Dr. Leonberger indicated that Plaintiff had mild to moderate impairment in his ability to understand, remember, and apply information, mild impairment in his ability to interact with others, moderate to marked impairment in deficiencies of concentration, persistence, or maintaining pace, and mild impairment in his ability to adapt and manage himself. (Tr. 839). He made the following observations regarding Plaintiff's mental status and behavior:

> Mr. Gassiraro arrived on time for his scheduled appointment. His ID was checked (driver's license), and his identity was confirmed. He was awake, alert, and oriented to person, place, time, and situation. His appearance was notable for being a bald, Caucasian man of average height and weight, who had a gray beard and moustache. . . . His hygiene and grooming appeared to be good. Speech was normal in rate, rhythm, tone, articulation, and fluency. His thinking was logical and sequential with no evidence of a thought disorder present. His mood appeared mildly to moderately depressed, and his affect was somewhat down. His attention/concentration appeared to be fair to good. No unusual gait or motor abnormalities were noted. Insight into his current situation appears to be good.

(Tr. 838.) While Plaintiff indicated that his mood varied, that he experienced poor sleep, and had less-than-desirable energy levels, he expressed that his appetite was good. *Id.* Dr. Leonberger also noted that Plaintiff successfully answered several questions used to test mental function (e.g. testing awareness of current events, spelling ability, recall, social/practical knowledge questions, etc.). (Tr. 838-39.)

The ALJ assigned little weight to Dr. Leonberger's opinion, noting that his opinion was not informed by a treating relationship with Plaintiff or a review of all the medical evidence of record, that Dr. Leonberger's examination was performed more than five years after the alleged onset date of Plaintiff's disability, and that his opinion was not consistent with his own examination results or other medical evidence of record finding normal affect, behavior, appearance, speech, memory, attention, thought processes, insight, and judgment. (Tr. 19.) In particular, the ALJ noted that Dr. Leonberger "ascribed many of the assessed limitations the claimant's physical, not mental, impairments[.]" *Id.* The ALJ stated that Dr. Leonberger was not an acceptable medical source capable of rendering medical opinion evidence regarding Plaintiff's physical limitations, that his professional capacity did not extend to Plaintiff's physical impairments and limitations, that he did not indicate that he performed any physical examination or review of medical records other than those of Plaintiff's psychiatrist, and that, rather than providing objective medical evidence for the basis of his opinion, Dr. Leonberger appeared to have based his functional assessment entirely on Plaintiff's subjective reports of his physical symptoms and limitations. (Tr. 20.) Consequently, the ALJ deemed that Dr. Leonberger's opinion was inconsistent with the medical record evidence, was rendered without supporting medical evidence, was outside his professional scope, and was therefore "entitled to little weight in evaluating the severity and limiting effects of the claimant's mental impairment." *Id.*

The court agrees that the ALJ erred in determining that Dr. Leonberger was not an acceptable medical source. The Social Security regulations state that licensed psychologists are acceptable medical sources who can establish an impairment and provide medical opinions. 20 C.F.R. §§ 404.1502(a)(2), 416.902(a)(2). However, Plaintiff must provide "some indication that the ALJ would have decided differently if the error had not occurred." *Byes v. Astrue*, 687 F.3d

913, 917 (8th Cir. 2012) (citing *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008)). Plaintiff argues that the error is not harmless because "[i]f the ALJ had included a limitation in the RFC to simple, routine tasks, [Plaintiff] would not have been able to perform his past work and the limitation would have precluded the use of any transferrable skills." [Doc. 15 at 4.] Yet, there is no indication that, had the ALJ determined that Dr. Leonberger was an acceptable medical source, she would have included a limitation in the Plaintiff's RFC to simple, routine tasks. First, the ALJ deemed Dr. Leonberger not to be an acceptable medical source for the purposes of rendering opinion evidence regarding Plaintiff's physical limitations, rather than his mental impairment(s). (Tr. 20.) Furthermore, the ALJ fully considered Dr. Leonberger's findings, applied the special technique, and found that Dr. Leonberger's findings were not determinative given the nature and length of his treatment relationship with Plaintiff, the supportability of his findings with medical signs, findings, and explanations, as well as the medical record evidence as a whole. Accordingly, the court finds that the ALJ's determination that Dr. Leonberger was not an acceptable source was harmless error.

### iii.  Medical Record Evidence from Dr. Rudoi

The medical record evidence also includes numerous exam notes from Dr. Rudoi, Plaintiff's primary care provider, dated from January 19, 2013 to June 23, 2015. (Tr. 400-55.) Dr. Rudoi's exam notes do not include assessments about the severity of Plaintiff's mental impairments, nor any specific findings regarding Plaintiff's limitations in the four functional areas. His notes contain a record of Plaintiff's medical history, a review of systems, exam notes, and Dr. Rudoi's observations from each visit. Dr. Rudoi observed that Plaintiff was in significant psychiatric distress on the following dates: April 23, 2014, noting that Plaintiff was stressed. (Tr. 422); on multiple dates, noting that Plaintiff appeared depressed and in "ALOT[sic] OF STRESS"

14

though his mood, affect, thought, and perception were intact and appropriate. (February 21, 2014, Tr. 425; November 5, 2013, Tr. 428; September 18, 2013, Tr. 431.) On the following dates, however, he observed that Plaintiff had "[n]o psychomotor mood, affect, speech, or thought impairments": June 23, 2015 (Tr. 407); April 1, 2015 (Tr. 410); December 16, 2014 (Tr. 413); September 10, 2014. (Tr. 416.) On May 23, 2014, Dr. Rudoi described Plaintiff's psychiatric facilities (speech, thought and perception, appearance, appropriateness of behavior, and stress levels) to be normal. (Tr. 419). All of Dr. Rudoi's notes reflect that Plaintiff had a history of depression and bipolar disorder, but indicated largely normal constitutional, neurologic, and psychiatric findings: that Plaintiff had appropriate behavior; appeared alert and oriented to person, place, and time; had normal gait; intact sensation; normal and symmetrical reflexes; no tremors; coherent and fluent speech with appropriate rate and intensity; appeared well-groomed; and in no apparent distress. (Tr. 406-54.)

The ALJ reviewed and considered Dr. Rudoi's records and found them to be supportive of her determination that Plaintiff's "mental impairment did not have more than a minimal effect on his ability to engage in basic mental work activities, and was non-severe." (Tr. 18.) Likewise, the ALJ also found that Plaintiff's descriptions of his daily activities, such as driving and handling his finances, reading for leisure, visiting friends, watching television, and ability to carry out household chores and personal care supported her findings in the four functional areas. (Tr. 16-17.) Based on Plaintiff's testimony and the medical record evidence, the ALJ determined that the Plaintiff had a mild limitation in all four functional areas, making specific findings in each functional area. (Tr. 16-17.)

Plaintiff has not showed that the ALJ would have decided differently had she not erred in determining that Dr. Leonberger was not an acceptable medical source, and the ALJ's assignment

of little weight to the medical opinions of Dr. Leonberger and Dr. Rabun was supported by the medical record evidence inconsistent with their opinions. *See Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014) (the ALJ properly gave less weight to a medical opinion where it conflicted with medical records and a claimant's account of her daily activities). As such, the ALJ's determination that Plaintiff's bipolar disorder and depression were not severe impairments was supported by substantial evidence.

### B.   Whether the RFC Was Supported by Substantial Evidence

Plaintiff's second argument is that the ALJ's RFC determination was not based on substantial evidence of record because the ALJ failed to point to medical evidence to support the conclusion that Plaintiff could perform sedentary work. [Doc. 11 at 12.] Plaintiff asserts that the ALJ never addressed the medical opinion of Dr. Edward M. Geltman. [Doc. 11 at 14]; [Doc. 15 at 6.] He argues that, although Dr. Geltman opined on an issue strictly reserved to the Commissioner, whether Plaintiff was disabled, that the ALJ has a duty to consider and address all medical source opinions (including opinions on issues reserved for the Commissioner), and that Dr. Geltman's medical findings could support a finding of disabled. [Doc. 11 at 14]; [Doc. 15 at 6.] Plaintiff further argues that the ALJ's RFC determination was not supported by the objective medical evidence and that the ALJ failed to adequately develop the record on Plaintiff's ability to function in the workplace. [Doc. 11 at 13-15.]

The Defendant responds that the ALJ evaluated the entire record and determined that Plaintiff was able to work based on substantial evidence supporting her RFC determination. [Doc. 14 at 9-10.] The Commissioner argues that there is no requirement that the RFC finding must be supported by a specific medical opinion, and that the ALJ is only required to develop a reasonably complete record. *Id.* The Commissioner avers that the ALJ thoroughly discussed

Plaintiff's treatment history with regard to his cardiac impairments, discussed Plaintiff's treatment history and limitations regarding IBS, considered Plaintiff's testimony and allegations regarding his impairments, and found that the objective medical evidence was not fully consistent with the degree of symptoms and limitations alleged by Plaintiff, that additional inconsistencies in the record undermine the credibility of Plaintiff's testimony, and that Plaintiff's activities of daily living supported a sedentary range RFC finding. *Id.* at 11-13. Finally, the Commissioner submits that the ALJ properly utilized vocational expert testimony to support the conclusion that Plaintiff could perform his past relevant work at the assessed RFC level. *Id.* at 14.

The Commissioner must assess a claimant's RFC based on all of the relevant medical and other evidence. 20 C.F.R. § 404.1545(a)(3). "An ALJ must consider a claimant's subjective complaints of pain," giving "full consideration to all of the evidence presented relating to subjective complaints and is not free to discredit those complaints unless they are inconsistent with the whole record, . . . [m]edical evidence and daily activities that are inconsistent with complaints of disabling pain . . . provide a basis for discounting subjective complaints." *Haynes v. Shalala*, 26 F.3d 812, 814-15 (8th Cir, 1994) (internal quotations and citations omitted); *see also Turpin*, 750 F.3d at 994 (citing *Clark v. Chater*, 75 F.3d 414, 417 (8th Cir. 1996)). To evaluate a claimant's testimony and complaints, the ALJ must fully consider all of the evidence presented, including the absence of an objective medical basis supporting the degree of severity of the complaints, the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as (1) the claimant's daily activities; (2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain; (3) any precipitating or aggravating factors; (4) the dosage, effectiveness, and side effects of any medication; and (5) the claimant's functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *see also* 20 C.F.R.

§ 404.1529(c)(3). The Commissioner has a duty to develop the record, and the Eighth Circuit has repeatedly recognized this duty where evidence of functional limitations is lacking or whether the record presents conflicting medical opinions as to which the Commissioner fails to explain a choice. *Noerper v. Saul*, 964 F.3d 738, 747 (8th Cir. 2020). However, the ALJ may "issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

In the instant case, the ALJ noted that the objective medical evidence regarding Plaintiff's physical and mental impairments did not support the degree of symptoms and limitations alleged by Plaintiff, and that his statements concerning the intensity, persistence, and limiting effects of those symptoms was not entirely consistent with the medical evidence and other evidence in the record. (Tr. 29.) The ALJ considered the entire medical record, including explicit consideration Dr. Geltman's assessment of class III heart failure. (Tr. 24.) She also detailed other treatment modes, and the effectiveness of treatment in reducing Plaintiff's cardiac symptoms and improving his functional status, through the objective medical evidence of record. (Tr. 24-27.) She found that with respect to Plaintiff's: (a) cardiac symptoms, while testing did show significant abnormalities at time, it also showed significant improvement, and that clinical examinations did not yield the extent of physical abnormalities that would be consistent with the symptoms and limitations he alleged, and he generally demonstrated regular heart rate and rhythm without murmurs, gallops, or rubs; (b) IBS, the record showed that his abdomen was generally non-tender to palpation on examination except when he was suffering from other acute gastrointestinal conditions, and that his weight remained stable during the alleged period of disability; (c) severe migraine headaches, the record showed no neurological or other abnormalities resulting from those headaches; (d)

18

osteoarthritis, the record did not contain any diagnostic imaging showing abnormalities of either knee, and there was only one record of pain with range of motion, which simultaneously noted that Plaintiff exhibited full range of motion in his knee without tenderness, crepitus, swelling, or deformity, and with normal gait; and (e) limiting mental impairment, the record reflected occasional findings of abnormal mood and affect, but repeated findings of normal euthymic mood and affect, and calm, cooperative behavior, as well as no findings of abnormal memory, speech, appearance, eye contact, psychomotor activity, insight, or judgment. (Tr. 29.) The ALJ also noted that the record did not contain any treatment records for approximately the first nine months of Plaintiff's alleged disability period, only sparse gastroenterological treatment, no urgent or emergent care or referral to a neurologist for migraine headaches, and only a single instance of treatment for osteoarthritis of the knees or any other joint, and almost no mental health treatment, despite having access to health insurance for most, if not all, of the alleged period of disability. (Tr. 30-31.) The ALJ explained that the record evidence showed that Plaintiff repeatedly denied musculoskeletal, psychiatric symptoms to medical providers, denied certain cardiac symptoms and denies symptoms of shortness of breath and dizziness to providers. (Tr. 31.) The ALJ also examined the evidence regarding Plaintiff's activities of daily living, noting that throughout the alleged period of disability, Plaintiff reported being able to participate in activities such as moderate housework, recreational activities like golf, bowling, dancing, and playing tennis, being able to play with his son and complete a three-mile walk, to tend to his garden, care for his child, read books and listen to the radio, and to go into the city to stay at hotels with his wife. (Tr. 32.) The ALJ found that Plaintiff's activities of daily living were not fully consistent with the extent of his subjective complaints and was supported of the ALJ's RFC determination. (Tr. 32.) Finally, the ALJ found that Plaintiff's work history was also inconsistent with the extent of his subjective

complaints, as Plaintiff reported that he left his job at the alleged onset date of his disability because its travel requirements interfered with his family obligations, and that while looking for work and interviewing during his alleged period of disability, he described himself as "in between jobs" and "unemployed" rather than disabled. (Tr. 33). The ALJ found that her RFC determination was "supported by the overall medical evidence, and to some extent, the medical opinion evidence and the claimant's statements." (Tr. 33.) The ALJ's RFC determination was based on consideration of all evidence presented, including the lack of supporting objective evidence, Plaintiff's activities of daily living, numerous exam records exhibiting normal findings, work history, and absence of attempts to obtain treatment corresponding to the alleged severity of his symptoms. Therefore, the court finds that the ALJ did not have a duty to further develop the record, and that the RFC determination was supported by substantial evidence.

## VIII.   Conclusion

In accordance with the foregoing, **IT IS HEREBY ORDERED** that the relief requested in Plaintiff's Complaint and Brief in Support of Complaint is **DENIED**. [Doc. 1, 11.]

**IT IS FURTHER ORDERED** that the court will enter a judgment in favor of the Commissioner affirming the decision of the administrative law judge.

_____

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 5th day of <u>March</u>, <u>2021</u>.